# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| PPT RESEARCH, INC., )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>SOLVAY USA, INC., d/b/a SOLVAY- )<br>RHODIA, SOLVAY, AND SOLVAY USA; )<br>and RHODIA OPERATIONS S.A.S. d/b/a )<br>RHODIA-SOLVAY, SOLVAY-RHODIA, )<br>RHODIA, RHODIA S.A., RHODIA- )<br>FRANCE, RHODIA, INC., AND RHODIA )<br>GROUP., )<br>)<br>Defendants. )<br>) | Civil Action No. 5:20-cv-02645-JLS<br><br><br>Judge Jeffrey L. Schmehl |

**<u>MEMORANDUM OF LAW IN SUPPORT OF SOLVAY USA INC.'S MOTION TO
COMPEL ARBITRATION AND TO DISMISS THE COMPLAINT, OR
ALTERNATIVELY, STAY PROCEEDINGS</u>**

...

# TABLE OF CONTENTS

Introduction .......................................................................................................................... 5

Background to the Parties' Arbitration Agreements........................................................... 6

Argument ............................................................................................................................ 8

I.  The FAA Applies To This Dispute ............................................................................... 8

II. This Court Should Compel Arbitration........................................................................ 10

    A.    PPT And Solvay Entered Into Valid, Written Agreements To Arbitrate ............ 10

    B.    The Arbitration Provisions Are Not Unconscionable.......................................... 11

    C.    The Dispute Falls Within The Scope Of The Arbitration Agreement................. 12

    D.    Arbitrability Has Expressly Been Delegated To The Arbitrator ......................... 15

III. This Lawsuit Should Be Dismissed, Or Alternatively, Stayed Pending The Conclusion Of Arbitration ........................................................................................... 16

    A.    PPT's Complaint Must Be Dismissed .................................................................. 16

    B.    In The Alternative, PPT's Complaint Must Be Stayed Pending The Outcome Of Arbitration..................................................................................... 17

Conclusion ........................................................................................................................ 17

# **TABLE OF AUTHORITIES**

Page

**CASES**

*AT&T Mobility LLC v. Concepcion*,
   131 S. Ct. 1740 (2011) ............................................................................................................9

*AT&T Techs., Inc. v. Commc'ns Workers of America*,
   475 U.S. 643 (1986) ..............................................................................................................13

*Citizens Bank v. Alafabco, Inc.*,
   539 U.S. 52 (2003) ..................................................................................................................9

*Clerk v. First Bank of Del.*,
   735 F. Supp. 2d 170 (E.D. Pa. 2010) ....................................................................................11

*Dean Witter Reynolds, Inc. v. Byrd*,
   470 U.S. 213 (1985) ..............................................................................................................10

*Gilmer v. Interstate/Johnson Lane Corp.*,
   500 U.S. 20 (1991) ..................................................................................................................9

*Goodwin v. Elkins & Co.*,
   730 F.2d 99 (3d Cir. 1984) ....................................................................................................13

*Guidotti v. Legal Helpers Debt Resolution, LLC*,
   716 F.3d 764 (3d Cir. 2013) ..................................................................................................16

*Henry Schein, Inc. v. Archer & White Sales, Inc.*,
   139 S. Ct. 524 (2019) ............................................................................................................15

*Invista S.A.R.L. v. Rhodia S.A.*,
   625 F.3d 75 (3d. Cir. 2010) ..................................................................................................10

*Leboon v. Zurich Am. Ins. Co.*,
   673 F. App'x 173 (3d Cir. 2016) ........................................................................................6, 7

*Liv Hidravlika D.O.O. v. S.A. Diebolt*,
   No. 05-10577 (Paris Ct. App. Feb. 28, 2008) ................................................................14, 16

*Perry v. Thomas*,
   482 U.S. 483 (1987) ................................................................................................................9

*Pig Imp. Co. v. Middle States Holding Co.*,
    943 F. Supp. 392 (D. Del. 1996) ........................................................................................11

*Renfrew Centers, Inc. v. UNI/CARE Systems Inc.*,
    920 F. Supp. 2d 572 (E.D. Pa. 2013) .................................................................................13

*Richardson v. Coverall N. Am., Inc.*,
    No. 18-3393, 2020 WL 2028523 (3d Cir. Apr. 28, 2020) ..................................................15

*Sandvik AB v. Advent Int'l Corp.*,
    220 F.3d 99 (3d Cir. 2000) ...................................................................................................9

*Seus v. John Nuveen & Co.*,
    146 F.3d 175 (3d Cir. 1998) ...............................................................................................16

**STATUTES**

9 U.S.C. § 2 ...................................................................................................................................9

9 U.S.C. § 3 .............................................................................................................................5, 17

9 U.S.C. § 4 .....................................................................................................................5, 10, 17

**OTHER AUTHORITIES**

2017 ICC Arbitration Rules, Article 29 ................................................................................14, 16

2017 ICC Arbitration Rules, Article 6(5) ...................................................................................15

Fed.R.Civ.P.12(b)(6) ............................................................................................................ passim

Defendant Solvay USA Inc. ("Solvay") files this Memorandum of Law in Support of its Motion to Compel Arbitration and Motion to Dismiss, or Alternatively, Stay Proceedings pursuant to Sections 3 and 4 of the Federal Arbitration Act, 9 U.S.C. §§ 3, 4, and Fed.R.Civ.P.12(b)(6).

## INTRODUCTION

This case arises from disputes over two contracts between Plaintiff PPT Research, Inc. ("PPT") and Solvay, where both contracts specifically provide for "All disputes" to be settled by binding arbitration at the International Chamber of Commerce ("ICC Arbitration"). Rather than abide by its promise to arbitrate disputes, PPT impermissibly sued in this Court. All of PPT's claims are arbitrable. PPT's Complaint confirms that PPT sues on these two contracts (see the Fourth Cause of Action in PPT's Complaint at ¶¶ 250–267 claiming breach of the Reciprocal Confidentiality Agreement and the Technology License Agreement) and other claims all of which, according to PPT's Complaint, "arise from a common nucleus of operative fact." Compl. at ¶¶ 58, 250–267.

PPT's lawsuit alleges (1) breaches of the two contracts—a confidentiality agreement and a technology license agreement; (2) related claims for trade secret misappropriation based on the alleged contractual confidentiality obligations; and (3) a related claim for injunctive relief as a remedy for the alleged misappropriation. All of these claims are "arising out of or in connection with, the validity, interpretation, performance and/or termination" of the asserted confidentiality agreement and therefore belong in arbitration (citing the arbitration clause in the parties' confidentiality agreement). *See* Declaration of Laurent Thomas ("Thomas Decl."), Ex. 1 at ¶ 6.2. In fact, the parties further affirmatively agreed in the arbitration clause that they would arbitrate "without recourse to the ordinary courts of law." *Id*.

Regardless of the merits of PPT's claims or lack thereof, this is not the proper forum for the parties' dispute. PPT agreed to broad arbitration provisions in both contracts that plainly cover its claims here. PPT has no basis to avoid arbitration. PPT cannot avoid arbitration by its assertion of other related causes of action or by claiming that the arbitration provision is unconscionable due to the associated costs of arbitration. PPT is bound by the arbitration provisions which it negotiated and signed.[1] This Court should order arbitration of PPT's claims and dismiss this action under Fed.R.Civ.P.12(b)(6) for failure to state a claim. In the alternative, this Court should order arbitration of PPT's claims and stay proceedings pending the completion of arbitration.

## BACKGROUND TO THE PARTIES' ARBITRATION AGREEMENTS

Solvay is a global leader in materials, chemicals and solutions for a wide range of industries including automotive, aerospace, electronics, and healthcare, among others. Solvay is involved in the development, production and sale of various chemicals and polymers that relate to the development of silicon wafers. PPT represented itself as a manufacturer of an LVS micro-gel particle slurry suspension system ("LVS technology") used in the process of cutting solar wafers, which, in turn, are used to manufacture solar cells for solar panels.

In order to explore the possibility of PPT's LVS technology, Rhodia Operations S.A.S. ("Rhodia") and PPT entered into a Reciprocal Confidentiality Agreement ("RCA") in June 2014. Compl. at ¶ 89; Thomas Decl., Ex. 1 at page 1.[2] The parties amended the RCA in August 2014 ("RCA Amendment") to include Solvay USA Inc. Compl. at ¶ 90; *see* Thomas Decl., Ex. 2 at

---

[1] Solvay has its own claims against PPT which it properly asserted in a Request for Arbitration filed at the International Chamber of Commerce International Court of Arbitration. A copy of that Request for Arbitration is attached to the Declaration of Randall E. Kay as Ex. 1.

[2] The RCA is referenced in the Complaint at ¶ 89, so this Court may properly consider it at this stage. *See e.g. Leboon v. Zurich Am. Ins. Co.,* 673 F. App'x 173, 176 (3d Cir. 2016) ("[T]he Court may consider a document explicitly relied upon in the complaint without converting the motion to dismiss to a summary judgment motion.").

page 1.[3]  The RCA and RCA Amendment established the terms by which PPT, Rhodia and Solvay would exchange certain information and samples.  *See* Thomas Decl., Ex. 1 at § B.

The RCA broadly stated in pertinent part that: "[a]ll disputes arising out of, or in connection with, the validity, interpretation, performance and/or termination of this Agreement, which cannot be amicably settled between the parties, shall be finally settled under the Arbitration Rules by one or more arbitrators appointed in accordance with such Arbitration Rules without recourse to the ordinary courts of law."  Thomas Decl., Ex. 1 at § 6.2.

Soon thereafter, based on PPT's representations regarding the commercial readiness of its LVS technology, Solvay and PPT entered into a Technology License Agreement ("TLA"), effective February 20, 2015.  Compl. at ¶¶ 104–05; *see* Thomas Decl., Ex. 3 at page 1.[4]  The purpose of the TLA was to permit Solvay to market the LVS technology in China and Korea, with other territories to be added later.  *See* Thomas Decl., Ex. 3 at § 1.  The parties then amended the TLA in April 2016 ("TLA Amendment").  Compl. at ¶ 143; *see also* Thomas Decl., Ex. 4 at page 1.[5]  The TLA also has a broad, binding arbitration agreement, providing in pertinent part: "[a]ll disputes arising in connection with this Agreement and which cannot be settled amicably shall be settled by arbitration in accordance with the Rules of Arbitration of the International Chamber of Commerce (ICC)."  Thomas Decl., Ex. 3 at § 11(b).

In order to allow Solvay to benefit from the license grant under the TLA, PPT agreed to provide a "Technology Package" within 30 days of execution of the agreement that was required to include information regarding the LVS technology, including final "ready-to-use" product

---

[3] The RCA Amendment is referenced in the Complaint at ¶ 90, so this Court may properly consider it at this stage.  *See e.g. Leboon v. Zurich Am. Ins. Co.,* 673 F. App'x 173, 176 (3d Cir. 2016).

[4] The TLA is referenced in the Complaint at ¶¶ 104–05, so this Court may properly consider it at this stage.  *See e.g. Leboon v. Zurich Am. Ins. Co.,* 673 F. App'x 173, 176 (3d Cir. 2016).

[5] The TLA Amendment is referenced in the Complaint at ¶ 143, so this Court may properly consider it at this stage.  *See e.g. Leboon v. Zurich Am. Ins. Co.,* 673 F. App'x 173, 176 (3d Cir. 2016).

information. Thomas Decl., Ex. 3 at §§ 1, 3(a). Solvay learned shortly after that PPT had not actually developed the necessary technology to make the licensed LVS technology commercially viable. As a result, Solvay had to begin independent development work to develop a novel solution in order to produce LVS technology that could be marketed and sold, and subsequently filed for patent protection on its innovations. After lengthy communications between the parties over PPT's failure to perform its contractual obligations, Solvay gave notice to PPT in 2017 that PPT was in material breach of the TLA.

In its lawsuit, PPT alleges that Solvay breached the RCA and the TLA through Solvay's own development of technology and Solvay's filing of a patent application that allegedly disclosed PPT's confidential proprietary trade secret information. *See* Compl. at ¶¶ 217–19 and 222–23. In filing this Complaint, PPT ignored the clear arbitration agreements expressly set forth in the RCA and TLA. PPT's Complaint is silent regarding its disregard for the arbitration clauses and PPT's agreement to arbitrate. Nowhere does PPT's Complaint contend that the arbitration clauses are unenforceable or unconscionable.[6] Because PPT cannot avoid the terms of its arbitration agreements, Solvay moves to compel arbitration and dismiss the Complaint, or in the alternative, compel arbitration and stay proceedings pending conclusion of arbitration.

## ARGUMENT

### I.     The FAA Applies To This Dispute

The Federal Arbitration Act ("FAA") governs the enforceability of the arbitration agreements in this case. The FAA broadly provides that: "A written provision in . . . a contract

---

[6] In meet and confer discussions among counsel, PPT's litigation counsel takes the position that the expense of arbitration should exempt PPT from abiding by its contractual commitment to arbitrate. PPT did not deny that the arbitration provisions covered the scope of the dispute, but instead argued that it should not be subject to arbitration provisions because of the associated costs and the injunctive relief remedy which it prefers be in court. Neither of these explanations overcomes the requirement in the Federal Arbitration Act that the parties abide by their contractual arbitration agreement.

evidencing a transaction involving commerce to settle by arbitration . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2; *see also Gilmer v. Interstate/Johnson Lane Corp.,* 500 U.S. 20, 24–26 (1991).

The United States Supreme Court has made clear that the FAA "manifest[s] a 'liberal federal policy favoring arbitration[.]'" *Gilmer,* 500 U.S. at 20 (internal citations omitted); *see also AT&T Mobility LLC v. Concepcion*, 131 S. Ct. 1740, 1745 (2011) (reaffirming the "'liberal federal policy favoring arbitration'"). The FAA "establishes a strong policy in favor of compelling arbitration over litigation." *Sandvik AB v. Advent Int'l Corp.,* 220 F.3d 99, 104 (3d Cir. 2000). Arbitration agreements falling within the scope of the FAA "must be 'rigorously enforce[d].'" *Perry v. Thomas,* 482 U.S. 483, 490 (1987).

The FAA applies to any dispute in state or federal court concerning a contract evidencing a transaction involving commerce. The FAA is broadly construed as to the types of agreements included in its reach. As the United States Supreme Court has stated,

> we have interpreted the term "involving commerce" in the FAA as the functional equivalent of the more familiar term "affecting commerce"—words of art that ordinarily signal the broadest permissible exercise of Congress' Commerce Clause power. . . . Because the statute provides for "the enforcement of arbitration agreements within the full reach of the Commerce Clause[]" . . . it is perfectly clear that the FAA encompasses a wider range of transactions than those actually "in commerce"—that is, "within the flow of interstate commerce[.]"

*Citizens Bank v. Alafabco, Inc.*, 539 U.S. 52, 56 (2003). Here, the FAA applies to the RCA and TLA. Further, PPT's claims arise out of contracts between PPT (of Pennsylvania), Solvay (with its principal place of business in New Jersey), and Rhodia Operations S.A.S. (alleged to be a foreign corporation). Compl. at ¶¶ 55–57, 89–90, 104. Thus, the RCA and TLA are contracts "involving commerce" subject to the FAA.

## II. This Court Should Compel Arbitration

Under the FAA, the party seeking to compel arbitration has the initial burden to establish that: (1) there is a valid arbitration agreement; and (2) the claim asserted falls within the arbitration agreement's scope. *Invista S.A.R.L. v. Rhodia S.A.,* 625 F.3d 75, 84 (3d. Cir. 2010). If an arbitration agreement is present, the claims are encompassed by the agreement, and the party opposing arbitration fails to prove any defense to enforcement, the trial court has no discretion but to compel arbitration. *See Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985) ("By its terms, the [FAA] leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration[.]"). "The court shall hear the parties, and upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement." 9 U.S.C. § 4.

### A. PPT And Solvay Entered Into Valid, Written Agreements To Arbitrate

Effective June 9, 2014, and amended August 12, 2014, PPT executed the RCA and RCA Amendment agreements, respectively. Thomas Decl., Ex. 1 at § C, Ex. 2 at page 1. Through these agreements, PPT agreed that "[a]ll disputes arising out of, or in connection with, the validity, interpretation, performance and/or termination of" the RCA and RCA Amendment must be settled in binding arbitration, "without recourse to the ordinary courts of law." *See* Thomas Decl., Ex. 1 at § 6.2. The RCA also provides that the governing law must be Delaware (excluding conflict of law principles), arbitration rules would be governed by The Rules of Arbitration of the International Chamber of Commerce, and the arbitration would take place in Delaware. Thomas Decl., Ex. 1 at § C. In its Complaint, PPT acknowledged these agreements

numerous times and did not dispute their validity. The RCA constitutes a valid, written agreement between the parties to arbitrate this dispute.

### B. The Arbitration Provisions Are Not Unconscionable

To the extent PPT may seek to avoid arbitration by claiming that the RCA's and TLA's arbitration provisions are unconscionable, that argument cannot prevail. "Under Pennsylvania law, there must be both procedural and substantive unconscionability in order to void an arbitration provision or a contract in general." *Clerk v. First Bank of Del.*, 735 F. Supp. 2d 170, 181 (E.D. Pa. 2010) (citing *Harris v. Green Tree Fin. Corp.*, 183 F.3d 173, 181 (3d Cir. 1999)); *see also Pig Imp. Co. v. Middle States Holding Co.*, 943 F. Supp. 392, 402 (D. Del. 1996) (noting that a party seeking to void a contract clause as unconscionable has the burden of demonstrating procedural/substantive unconscionability). "'Procedural unconscionability' describes the process by which the parties entered into the contract[]" and has been defined "by the Pennsylvania Supreme Court to mean the 'absence of meaningful choice on the part of one of the parties.'" *Id*. (citing *Witmer v. Exxon Corp.*, 495 Pa. 540, 551 (1981)). "'Substantive unconscionability' is found where the terms of an arbitration provision or contract 'unreasonably favor' the party with the greater bargaining power." *Clerk*, 735 F. Supp. 2d at 181 (citing *Witmer*, 495 Pa. at 551).

The RCA's arbitration provision is neither procedurally nor substantively unconscionable. First, with respect to the former, the arbitration provision was not part of a contract of adhesion such that the provision would be procedurally unconscionable. PPT is an incorporated entity with an established place of business in Pennsylvania. Compl. at ¶ 55. More importantly, it was PPT who dictated the terms of the TLA arbitration provision, not Solvay. *See* Declaration of Eric Aubay ("Aubay Decl.") at ¶¶ 4–5. The original draft of the TLA arbitration provision stated that "[t]he place of arbitration shall be New York" and that "[t]he arbitral tribunal shall apply the state laws of the State of New York[,]" but PPT requested that this be

changed to Pennsylvania, and Solvay agreed. *Id*. Further, PPT had representation of legal counsel for the drafting of the TLA agreement and TLA arbitration provision. PPT's President and CEO Chip Ward stated to Solvay that PPT needed to have its own attorneys review the TLA before PPT could finalize and sign it. *See* Aubay Decl. at ¶ 6. Clearly, PPT's entering into the arbitration provisions was not with a lack of meaningful choice. PPT was not only represented by counsel, but it directed the arbitration terms.

Second, the RCA's arbitration provision does not "unreasonably favor" a party with greater bargaining power. Solvay does not hold greater bargaining power, but even if it did, the terms of the RCA arbitration provision are still indisputably bilateral. These terms require that both PPT and Solvay submit their claims to arbitration. The first page of the RCA also states that one of the RCA's purposes is for both companies to assess "their interest to enter into a further agreement related to a collaboration between both companies." Thomas Decl., Ex. 1 at § C. The RCA does not contain many terms—it merely set the stage for PPT and Solvay to exchange certain information and samples that could help foster a future collaboration and relationship. And just because parties to arbitration incur fees does not negate the fact that PPT and Solvay—both incorporated companies with legal counsel—entered into a valid, enforceable arbitration agreement. Since the arbitration provision does not unreasonably favor a party with greater bargaining power (nor does either party even have greater bargaining power), the arbitration provision is not substantively unconscionable.

### C.   The Dispute Falls Within The Scope Of The Arbitration Agreement

In addition to constituting a valid agreement to arbitrate, the RCA's arbitration provision encompasses PPT's claims here. As an initial matter, the wording of the arbitration provision is of the broadest nature. The provision states that "**[a]ll disputes arising out of, or in connection with**, the validity, interpretation, performance and/or termination of this Agreement, which

cannot be amicably settled between the parties, shall be finally settled under the Arbitration Rules by one or more arbitrators appointed in accordance with such Arbitration Rules **without recourse to the ordinary courts of law**." Thomas Decl., Ex. 1 at § 6.2 (emphasis added). The United States Supreme Court has held that the presumption in favor of arbitration is even stronger when the arbitration provision is written broadly, as here. *AT&T Techs., Inc. v. Commc'ns Workers of America*, 475 U.S. 643, 650 (1986) (finding a provision requiring arbitration for "any differences" is sufficiently broad to fall within the presumption); *see also Goodwin v. Elkins & Co.*, 730 F.2d 99, 110–11 (3d Cir. 1984) (finding that the phrase "any controversy" is certainly broad and expansive); *Renfrew Centers, Inc. v. UNI/CARE Systems Inc.*, 920 F. Supp. 2d 572, 574 (E.D. Pa. 2013) (noting that "the quintessential broad arbitration provision [is one] that directs to arbitration any controversy or claim 'arising out of' or 'related to' the agreement.").

PPT's claims fall squarely within the scope of the arbitration agreement. PPT agreed to arbitrate "[a]ll disputes arising out of, or in connection with, the validity, interpretation, performance and/or termination of this Agreement." Thomas Decl., Ex. 1 at § 6.2. This case not only "arises out of" or is "in connection with" the RCA, but the RCA is central to PPT's claims. All four of PPT's causes of action in its Complaint stem from or rely on the RCA and Solvay's alleged breach of confidentiality under the RCA. PPT's first cause of action ("COA") alleges the misappropriation of trade secrets under the federal Defend Trade Secrets Act of 2016, and states that PPT "provided its trade secret information to Solvay under strict confidentiality and non-disclosure restrictions as included in . . . the Reciprocal Confidentiality Agreement" and that Solvay "used the confidential proprietary trade secret information . . . to misappropriate said trade secrets." Compl. at ¶¶ 217–218. PPT's second COA similarly alleges misappropriation of

trade secrets, under Pennsylvania law, and similarly discusses the RCA. Compl. at ¶¶ 232–233. PPT's third COA requests injunctive relief as a remedy to protect against the RCA's June 2020 expiration. Compl. at ¶ 246. Finally, PPT's fourth COA alleges breach of contract under the RCA and the TLA due to Solvay's alleged failure to return all of PPT's confidential proprietary trade secret information and divulging of PPT's confidential proprietary trade secret information to a patent office. Compl. at ¶¶ 251–254.

Should PPT argue that its claims do not fall within the scope of the arbitration agreements because of the claim for injunctive relief, that argument cannot prevail. The RCA's arbitration provision does not require that injunctive relief be sought in this Court but only says that it is an option "to the extent the same [is] not available in arbitration." Thomas Decl., Ex. 1 at § 6.2. Here though, injunctive relief is available in arbitration. *See, e.g.,* 2017 ICC Arbitration Rules, Art. 29; Declaration of Randall E. Kay ("Kay Decl."), Ex. 2 at Art. 29. Such relief can be granted by an ICC arbitrator, either on an emergency or permanent basis. *See*, *e.g.*, 2017 ICC Arbitration Rules, Art. 29; Kay Decl., Ex. 2 at Art. 29; *Liv Hidravlika D.O.O. v. S.A. Diebolt*, No. 05-10577, 1, 4 (Paris Ct. App. Feb. 28, 2008) (ordering, in ICC arbitration, that the respondent be prohibited from practicing a patent during the remainder of a contract without authorization from the claimant). Additionally, the trade secret misappropriation claims should be adjudicated in arbitration before any claim for an injunctive remedy is even up for consideration. And should PPT's claim for injunctive relief be allowed in this Court—which it should not for the reasons set forth above—this would needlessly stretch PPT's breach of contract, trade secret misappropriation, and injunctive relief claims across two venues when all such claims could have been, and were supposed to have been, heard in arbitration.

**D.     Arbitrability Has Expressly Been Delegated To The Arbitrator**

PPT and Solvay have already agreed to settle any question of arbitrability of disputes before an arbitrator.  Thomas Decl., Ex. 1 at § 6.2.  Specifically, the RCA arbitration provision says that "[a]ll disputes arising out of, or in connection with, the validity . . . of this Agreement . . . shall be finally settled under the Arbitration Rules . . . without recourse to the ordinary courts of law[,]" where the Arbitration Rules are The Rules of Arbitration of the International Chamber of Commerce.  Thomas Decl., Ex. 1 at §§ C, 6.2; *see also Richardson v. Coverall N. Am., Inc.*, No. 18-3393, 2020 WL 2028523, at *2 (3d Cir. Apr. 28, 2020) (holding that the issue of arbitrability was to be decided in arbitration, not court, where the parties' agreement said "'all controversies, disputes or claims . . . shall be submitted promptly for arbitration'" and that "'[a]rbitration shall be subject to … the then current Rules of the American Arbitration Association for Commercial Arbitration.").  Further, the United States Supreme Court recently explained:

> [w]hen the parties' contract delegates the arbitrability question to an arbitrator, a court may not override the contract. In those circumstances a court possesses no power to decide the arbitrability issue. That is true even if the court thinks that the argument that the arbitration agreement applies to a particular dispute is wholly groundless.

*Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 529 (2019).  The ICC Arbitration Rules similarly explain:

> [i]n all matters decided by the Court under Article 6(4), any decision as to the jurisdiction of the arbitral tribunal, except as to parties or claims with respect to which the Court decides that the arbitration cannot proceed, shall then be taken by the arbitral tribunal itself.

2017 ICC Arbitration Rules, Art. 6(5); Kay Decl., Ex. 2 at Art. 6(5).  To the extent questions exist about the arbitrability of PPT's claims, that issue must be raised before an ICC arbitrator.

### III. This Lawsuit Should Be Dismissed, Or Alternatively, Stayed Pending The Conclusion Of Arbitration

#### A. PPT's Complaint Must Be Dismissed

As PPT's claims are subject to arbitration, the Complaint must be dismissed pursuant to Fed.R.Civ.P.12(b)(6).  Under Third Circuit law, "when it is apparent on the face of the Complaint, and documents relied upon in the Complaint, that certain of a party's claims are subject to an enforceable arbitration clause, a motion to compel arbitration should be considered under a Rule 12(b)(6) standard without discovery's delay."  *Guidotti v. Legal Helpers Debt Resolution, LLC,* 716 F.3d 764, 776 (3d Cir. 2013).  If all the claims involved in an action are arbitrable, a court may dismiss the action outright instead of staying it pending arbitration.  *Seus v. John Nuveen & Co.*, 146 F.3d 175, 179 (3d Cir. 1998), citing *Dancu v. Coopers & Lybrand*, 778 F. Supp. 832, 835 (E.D. Pa. 1991), aff'd, 972 F.2d 1330 (3d Cir. 1992).

PPT's claims, as described above, clearly fall within the scope of the arbitration provisions in the RCA and TLA.  To the extent PPT seeks injunctive relief, the RCA's arbitration provision does not require that injunctive relief be sought in this Court but only says that it is an option "to the extent the same [is] not available in arbitration."  Thomas Decl., Ex. 1 at § 6.2.  Here though, such relief can be granted by an ICC arbitrator, either on an emergency or permanent basis.  *See, e.g.,* 2017 ICC Arbitration Rules, Art. 29; Kay Decl., Ex. 2 at Art. 29; *Liv Hidravlika D.O.O. v. S.A. Diebolt*, No. 05-10577, 1, 4 (Paris Ct. App. Feb. 28, 2008) (ordering, in ICC arbitration, that the respondent be prohibited from practicing a patent during the remainder of a contract without authorization from the claimant).  This is especially true in this circumstance, where any issue of arbitrability has been delegated to an arbitrator under the ICC

rules. *See* Thomas Decl., Ex. 1 at § 6.2. And should PPT's claim for injunctive relief be allowed in this Court—which it should not for the reasons set forth above—this would needlessly stretch PPT's breach of contract, trade secret misappropriation, and injunctive relief claims across two venues when all such claims could have been, and were supposed to have been, heard in arbitration. Accordingly, PPT's Complaint should be dismissed.

### B. In The Alternative, PPT's Complaint Must Be Stayed Pending The Outcome Of Arbitration

In the alternative to dismissal of this case under governing Third Circuit law as set forth above, this case should be stayed pending arbitration. Section 3 of the FAA provides that where a valid arbitration agreement requires a dispute to be submitted to a binding arbitration, the district court must stay the action "until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration." 9 U.S.C. § 3. As this entire action falls within the scope of the parties' arbitration agreements in the RCA and TLA, this Court should stay the case pending arbitration at a minimum, if the case is not dismissed.

### CONCLUSION

For the reasons set forth herein, Solvay respectfully requests that this Court enter an Order compelling arbitration of PPT's claims, and dismissing the litigation pursuant to 9 U.S.C. §§ 3–4 and Fed.R.Civ.P.12(b)(6).

Dated: July 2, 2020

Respectfully submitted,

  *s/ Rebekah B. Kcehowski*
Rebekah B. Kcehowski
JONES DAY
500 Grant Street, Suite 4500
Pittsburgh, PA 15219.2514
412.391.3939
*rbkcehowski@jonesday.com*

*Of Counsel*
*(pro hac to be filed):*

Randall E. Kay
JONES DAY
4655 Executive Drive, Suite 1500
San Diego, CA  92121-3134
858.314.1139
*rekay@jonesday.com*

*Counsel for Solvay USA Inc.*