# THOMAS DECLARATION

# EXHIBIT 2

# FIRST AMENDMENT
# TO
# RECIPROCAL CONFIDENTIALITY AGREEMENT

This First Amendment to Reciprocal Confidentiality Agreement ("First Amendment") dated as of August 12, 2014 between Rhodia Operations S.A.S., a French corporation with offices at 40 rue de la Haie Coq, Aubervilliers, 93306, France ("RHODIA FRANCE") and Solvay USA Inc., a Delaware corporation with offices at 8 Cedarbrook Drive, Cranbury, NJ 08512-7500 ("SOLVAY USA" and, together with RHODIA FRANCE, hereinafter referred to as "RHODIA") and PPT Research, Inc., a Pennsylvania corporation, with offices at 515 Business Park Lane, Allentown, PA 18109 ("PPT").

**Whereas,** RHODIA FRANCE and PPT entered into a Reciprocal Confidentiality Agreement dated June 9, 2014 (the "Confidentiality Agreement"); and

**Whereas,** RHODIA FRANCE, SOLVAY USA and PPT desire that SOLVAY USA, an affiliate of RHODIA FRANCE, be added as a party to the Confidentiality Agreement, and that the Confidentiality Agreement be otherwise amended in accordance with the terms set forth below;

**Now, Therefore,** it is hereby agreed that the Confidentiality Agreement shall be amended as follows:

1. Capitalized terms used herein shall have the meanings ascribed thereto in the Confidentiality Agreement unless they are otherwise defined herein. References in this First Amendment to a paragraph or subparagraph refer to a paragraph or subparagraph of the Confidentiality Agreement.

2. RHODIA FRANCE, SOLVAY USA and PPT hereby agree that SOLVAY USA is added as a party to the Confidentiality Agreement and that the term "RHODIA", as defined in Section A of the Confidentiality Agreement, is hereby amended to mean RHODIA FRANCE and SOLVAY USA, as such companies are identified in the first paragraph of this First Amendment above.

3. The text of Section 2.4(b) is hereby deleted in its entirety and is replaced with the following:

"(b) not disclose to any third party (including patent offices) and/or publish, the results of Recipient's evaluation of the Samples supplied by Discloser; and"

4. A new Section 2.5 is hereby added to the Confidentiality Agreement, following Section 2.4, having the following text:

"2.5 Notwithstanding anything to the contrary herein contained, Rhodia will have the right to disclose to any third party that is not an Affiliate of Rhodia (a "Rhodia Partner") the Confidential Information of PPT and its Affiliates (the "PPT Information") and/or Samples of PPT and its Affiliates ("PPT Samples"), provided that such Rhodia Partner has executed and delivered to one or more of RHODIA FRANCE or SOLVAY USA a confidentiality agreement substantially in the form of that attached hereto as **Exhibit "A"** (a "Third Party NDA"), wherein, among other things, such Rhodia Partner has agreed to (i) keep the PPT Information confidential, to use the same only for the purposes described therein, (ii) not to disclose the PPT



Information to other parties, except as allowed in such Third Party NDA, and (iii) not to analyze PPT Samples except in connection with such purposes described in the Third Party NDA and that, as between Rhodia and the Rhodia Partner, the results thereof are the confidential information of one or all of RHODIA FRANCE or SOLVAY USA."

4. A new Section 2.6 is hereby added to the Confidentiality Agreement, following Section 2.5, having the following text:

"2.6 Rhodia and PPT hereby agree that the results of any analyses or tests on the operational performance of PPT products (including Samples) or technology comprising PPT Confidential Information, which is undertaken by Rhodia, directly or indirectly, as allowed hereunder ("Performance Reports"), shall be the Confidential Information of both Rhodia and PPT under this Agreement. Rhodia and PPT hereby further agree that the results of any other analyses or studies undertaken by Rhodia, directly or indirectly, as allowed hereunder, in furtherance of the Purpose ("Other Reports"), shall be the sole property of Rhodia, subject, always, to Rhodia's compliance with its obligations under this Agreement to the extent that any such Other Report contains any Confidential Information of PPT; *provided that* Rhodia shall have no obligation under Section 2.1(e) hereof with respect to any such Other Report. Rhodia agrees to provide PPT with a copy of any Performance Report promptly after the completion thereof, but Rhodia will have no obligation to disclose the content of any of the Other Reports to PPT."

5. Except as set out in this First Amendment, all terms of the Confidentiality Agreement shall remain unchanged and in full force and effect.

6. This First Amendment shall be governed by and interpreted under the laws of the State of Delaware without giving effect to the choice of laws principles thereof, and may not be superseded, amended or modified except by written agreement between the parties.

7. This First Amendment may be executed in any number of counterparts and via electronic copy (pdf.). This has the same effect as if the signatures on the counterparts were on a single copy of this First Amendment.

In Witness Whereof, the parties have signed this First Amendment as of this 14th day of August 2014 through their authorized representatives as of the date first shown above.

RHODIA OPERATIONS S.A.S.

By: _____
Name:
Title: Case Manager

PPT RESEARCH, INC.

By: _____
Name: DR. CHIP WARD
Title: CEO

SOLVAY USA INC.

By: _____
Name: Laurent Thomas
Title: VP Strategy

# Exhibit "A"

## CONFIDENTIALITY AGREEMENT

This **Confidentiality Agreement** ("Agreement") is, effective as of _____, 2014 ("Effective Date"), made by and between [one of RHODIA FRANCE or SOLVAY USA] ("SOLVAY"), a corporation organized and existing under the laws of _____ and having offices at _____, and _____ ("Partner"), a corporation organized and existing under the laws of _____ and having offices at _____.

SOLVAY wishes to discuss with Partner certain technologies for use in silicon wafer applications, and may want Partner to analyze certain product samples ("Samples") with SOLVAY's prior written approval and to provide SOLVAY with the results thereof (the "Results"). In such discussions, and in connection with any such Sample analysis and reporting of Results, it is anticipated that SOLVAY may, directly or indirectly, disclose or make available to PARTNER, orally, visually, by document, electronic mail, computer disks, magnetic tape, or by any other manner, business and technical information, including Samples, that SOLVAY regards as confidential, including without limitation information and/or Samples of PPT Research, Inc. which have been provided to SOLVAY under agreement of confidentiality (the "SOLVAY INFORMATION"). Such SOLVAY INFORMATION shall include but not be limited to chemical formulations and properties thereof, process and manufacturing methods and procedures, related technical data and information, trade secrets, trademarks, know-how, prototypes, patents, patent applications, formulae, processes, samples, reports, pricing and market information, and other intellectual property and confidential information, and all notes, analyses, compilations, studies and other documents based upon or including SOLVAY INFORMATION prepared by or on behalf of PARTNER. PARTNER acknowledges and understands that SOLVAY will not engage in the foregoing discussions, or permit the analysis of any Samples, without PARTNER's execution of this Agreement.

Now therefore, it is hereby agreed as follows:

**1.** The disclosure of SOLVAY INFORMATION, as well as the scope and content of the SOLVAY INFORMATION to be disclosed shall, at all times, be solely within the discretion of SOLVAY.

**2.** PARTNER shall: (a) hold SOLVAY INFORMATION in confidence and not disclose SOLVAY INFORMATION to any third party without SOLVAY's prior written consent; and (b) use SOLVAY INFORMATION only for the purpose of the discussions above and any Sample analysis and the reporting to SOLVAY of the Results (the "Purpose"); and (c) restrict disclosure of SOLVAY INFORMATION to those of its employees who have a need to know for the Purpose. The obligations of PARTNER under this paragraph 2 shall expire seven (7) years after the Effective Date.

**3.** Any Samples provided hereunder shall be used only for the Purpose. PARTNER will not analyze such Samples to determine their chemical composition, microscopic structure or method of manufacture without SOLVAY's prior written authorization and, then, only within the limits of such authorization. Upon completion of its evaluation of any Samples provided hereunder, PARTNER shall either return any unused Samples to SOLVAY together with materials derived therefrom, or shall certify in writing the disposal of same in a manner that does not reveal its identity or method of manufacture and, otherwise, in compliance with all applicable laws and regulations relating to health safety and the environment. PARTNER will report Results to SOLVAY in writing, and PARTNER agrees that such Results, as between SOLVAY and PARTER, shall be considered SOLVAY INFORMATION.

**4.** The obligations set forth in paragraph 2 above shall not apply to any SOLVAY INFORMATION that: (a) is in the possession of PARTNER, as evidenced by its written records, at the time of disclosure by SOLVAY; or (b) is or later becomes publicly known through no wrongful act of PARTNER; or (c) is independently discovered by PARTNER without reliance upon SOLVAY INFORMATION, as evidenced by PARTNER's written records; or (d) is provided to PARTNER free of restriction on disclosure by a third party having the right to so provide such SOLVAY INFORMATION; or (e) is required to be disclosed by operation of law, provided that PARTNER shall provide notice of such requirement to SOLVAY prior to any disclosure, so that SOLVAY may seek an appropriate protective order or other remedy, and PARTNER shall give necessary information and support to SOLVAY in furtherance of seeking such remedies, and shall only disclose that portion of SOLVAY INFORMATION that PARTNER is strictly compelled to disclose. SOLVAY INFORMATION which is specific shall not be deemed to fall within any of the above exceptions merely because it is embraced by more general information in such exception. In addition, any combination of features shall not be deemed to be within any of the above exceptions merely because the features are individually within such exception, but only if the combination itself and its principle of operation are within such exception.

**5.** PARTNER shall return to SOLVAY, upon request, any and all written documents comprising SOLVAY INFORMATION, except that RECIPIENT's legal counsel may retain one copy of such documents for record keeping purposes only.

**6.** PARTNER shall return to SOLVAY, upon request, any and all written documents comprising SOLVAY INFORMATION, except that PARTNER's legal counsel may retain one copy of such documents for the sole purpose of determining its legal liability hereunder.

**7.** Except as otherwise expressly provided, nothing in this Agreement shall be construed as granting any right in or license to PARTNER under any SOLVAY INFORMATION.

**8.** Neither this Agreement nor the disclosure of SOLVAY INFORMATION hereunder shall result in any obligation on the part of either party to enter into any other agreement with the other or constitute any representation or warranty of any kind by SOLVAY with respect to SOLVAY INFORMATION disclosed.

**9.** This Agreement shall be governed by and construed in accordance with the substantive laws of the State of Delaware, excluding any choice of law principles thereof.

**10.** Because unauthorized disclosure or use of SOLVAY INFORMATION could cause irreparable harm and significant injury to SOLVAY, PARTNER agrees that SOLVAY shall have the right to seek immediate injunctive relief to enforce PARTNER's obligations under this Agreement in addition to any other rights and remedies it may have, including without limitation those permitted by the law.

**11.** This Agreement constitutes the entire understanding between the parties hereto as to the subject matter hereof and merges all prior discussions between them relating thereto. No amendment or modification of this Agreement shall be valid or binding on the parties unless made in writing and signed on behalf of each of the parties by their respective duly authorized officers or representatives.

**12.** This Agreement may be executed in one or more counterparts, all of which shall be considered one and the same agreement, and shall become a binding agreement when one or more counterparts have been signed by each party and delivered to the other party. Signed counterparts of this Agreement may be delivered by facsimile and/or in electronic email in "portable document format" (".pdf").

IN WITNESS WHEREOF, PARTNER and SOLVAY have signed this Agreement through their respective authorized representatives.

**[Name of Partner]**

By _____
Name: _____
Title _____

**[Name of Solvay entity]**

By _____
Name: _____
Title _____

# RECIPROCAL CONFIDENTIALITY AGREEMENT

A. Parties:

|   |   |   |
|---|---|---|
|   | RHODIA OPERATIONS, a company incorporated in France, having its registered office located at 40 rue de la Haie Coq, 93306 Aubervilliers (France), | PPT RESEARCH, INC., a company incorporated in the state of Pennsylvania (USA), having its registered office located at 515 Business Park Lane Allentown, PA 18109 (USA), |
|   | hereinafter referred to as "Rhodia", | hereinafter referred to as "PPT", |

B. Recitals:

Rhodia is active in the development, production and sale of various chemicals and polymers, including, but not limited to, surfactants, polymers, lubricant formulations, and owns valuable know-how in connection therewith,

PPT is active in the development, production and sale of various formulations, including, but not limited to, carriers and slurries for Solar, Semiconductors, and Optical Wafer Manufacturing, and owns valuable know-how in connection therewith,

Rhodia and PPT wish to exchange certain information and samples which they consider as highly valuable and confidential to fulfill the Purpose (as hereinafter defined).

C. Definitions:

| Purpose | means the assessment (i) by Rhodia of the suitability to use PPT technologies in silicon wafer applications and (ii) by both parties of their interest to enter into a further agreement related to a collaboration between both companies |
|---|---|
| Effective Date | means 9 June 2014. |
| Exchange Period | means the period starting on the Effective Date and ending on 8 June 2015, unless earlier terminated by either party through notification thereof to the other party. |
| Secrecy Period | means the period starting on the Effective Date and ending on 8 June 2020 i.e. 5 (five) years after the end of the Exchange Period. |
| Governing Law | The law of Delaware (USA), excluding its conflicts of law principles. |
| Arbitration Rules | The Rules of Arbitration of the International Chamber of Commerce. |
| Arbitration Place | Delaware (USA) |

The parties agree to exchange their respective confidential information and samples under the terms and conditions set forth hereabove and in the hereunder General Terms and Conditions.

## GENERAL TERMS AND CONDITIONS

### 1. ADDITIONAL DEFINITIONS:

1.1. "Confidential Information" means (i) the Purpose, (ii) any technical, economic or business information disclosed by either party or its Affiliates ("Discloser") to the other party or its Affiliates ("Recipient") during the Exchange Period in relation with the Purpose, ((iii) any technical, economic or business information obtained by Recipient through the fulfillment of the Purpose from, and to the extent it relates to, any information under (ii)), and (iv) any information acquired visually by Recipient at the occasion of its visits to any of Discloser's facilities.
Confidential Information may include, without limitation, data, know-how, trade secrets, inventions, unpublished patent applications, specifications, product properties, compositions, technical capabilities and research and development programs.
Information shall be Confidential Information when, (i) if disclosed in writing or on any other tangible support, it is marked "confidential" by an appropriate legend or stamp, (ii) if disclosed orally or visually, it is identified as such during its disclosure and confirmed in writing within thirty (30) days after such disclosure, or (iii) acquired visually according to Sub-Clause 1.1 (v) hereabove.

1.2. "Sample" means any sample supplied by either party or its Affiliates ("Discloser") to the other party or its Affiliates ("Recipient") during the Exchange Period in relation with the Purpose.

1.3. "Affiliate" of a party means any entity or person controlling, or controlled by, or under common control with, such party, whether directly or indirectly; "control" (including, with correlative meanings, "controlling", "controlled by", and "under common control with") meaning the direct or indirect beneficial ownership of more than 50% of the voting or equity interest in such company or other entity.

1.4. For avoidance of doubt, Discloser and Recipient mean either Rhodia and its Affiliates or PPT and its Affiliates as the case may be.

### 2. CONFIDENTIALITY, NON DISCLOSURE AND RESTRICTED USE OBLIGATIONS:

2.1. With regard to Confidential Information and Samples, Recipient shall:

(a) hold the same in confidence using the same degree of care as it uses for protecting its own confidential information and samples of a like nature (but in no event less than a reasonable degree of care), including, by keeping in secure storage and reasonably separate from other information and materials (i) Confidential Information in tangible or documented form and (ii) Samples;
(b) not disclose or supply the same to any third party (including patent offices), except, to the extent required to fulfill the Purpose, to its Affiliates, or with Discloser's prior written agreement, or pursuant to Sub-Clause 2.2;
(c) limit access to the same, on a strict need to know basis, to its and its Affiliates' employees, requiring that access to fulfill the Purpose, provided (i) such employees are subject to confidentiality obligations no less stringent than those contained hereunder through appropriate agreements, (ii) such employees have been informed by Recipient of the obligations hereunder, and (iii) Recipient remains responsible for any violation of the obligations hereunder by such employees;
(d) not use, or in any way exploit for its benefit, the same except for the Purpose; and
(e) upon Discloser's written request and option, either return Confidential Information to Discloser, or destroy (or delete permanently in the case of digital or electronic media) the same, all Recipient's copies of the same and all extracts, notes, analyses, compilations, technical drawings, studies and other documents prepared by Recipient and embodying or utilizing any part of the same, except that (i) this obligation shall not apply to routinely created backup copies of electronic data, and (ii) Recipient may retain one (1) copy of Confidential Information in controlled access files in

accordance with the terms of this Agreement for the sole purpose of determining its legal obligations hereunder.

2.2. In the event Recipient is required to disclose Confidential Information or Samples under applicable law, regulation, supervisory authority or other applicable judicial or governmental order, Recipient shall (i) inform Discloser in writing before any disclosure thereof so that Discloser may seek an appropriate protective order, (ii) give upon Discloser's request all necessary information and support to ward off the disclosure thereof, (iii) ask the receiving third party to maintain confidentiality, and (iv) strictly limit the content of such disclosure to that portion of Confidential Information or Sample that it is strictly compelled to disclose. In any event, Recipient shall not oppose action by Discloser to obtain an appropriate protective order or other reliable assurance that confidential treatment will be accorded to Confidential Information and Samples.

2.3. Recipient agrees that disclosure of any Confidential Information and (re-)export of any Sample, as authorized according to the provisions of Sub-Clause 2.1, shall be subject to all export laws, restrictions and regulations.

2.4. With regard to Samples, in addition to obligations defined in Sub-Clause 2.1, Recipient shall:

(a) not disassemble, analyze, or have others analyze, Samples or any portions thereof to determine their chemical composition, microscopic structure or method of manufacture, except to the extent strictly required for the Purpose;
(b) not disclose to any third party (including patent offices) and/or not publish, the results of Recipient's evaluation of the Samples supplied by Discloser. For the avoidance of doubt, said results shall be considered and treated by both parties as Confidential Information of both parties; and
(c) upon Discloser's written request and option, either return to Discloser any unused or unconsumed portion of the Samples and any materials derived from the Samples produced in performance of the evaluation, or dispose of the same in a manner that does not reveal their identity or method of manufacturing and in compliance with all laws and regulations relating to health, safety, and environment.

3. EXCEPTIONS:

The obligations of Article 2 shall not apply to any portion of Confidential Information or Sample that Recipient can prove:
(a) was available to the public prior to receipt or achievement hereunder, or becomes available to the public thereafter through no fault or negligence of Recipient, or
(b) was already in Recipient's possession prior to receipt or achievement hereunder, or
(c) was lawfully obtained from a third party legally entitled to do so after the time of receipt or achievement hereunder, and Recipient is free to disclose without breach of any of its obligations, or
(d) was independently developed by or for Recipient by person(s) not having access to Discloser's Confidential Information or Samples.

For the purpose of this Article, any information which is specific, shall not be deemed to be within any of the foregoing exceptions, merely because it is embraced by more general information which falls within any one or more of the foregoing exceptions. In addition, any combination of features shall not be deemed to be within any of the foregoing exceptions, merely because individual features fall within any one or more of the foregoing exceptions, but only if the combination itself falls within any one of the foregoing exceptions.

4. WARRANTIES AND DISCLAIMERS:

4.1 Recipient acknowledges that Confidential Information and Samples are provided by Discloser "as is", without guarantee, warranty or representation of any kind, express or implied, including, but not limited to, as to (i) their accuracy or completeness, (ii) their merchantability, fitness for a

particular purpose and non infringement of third parties' intellectual property rights, and (iii) their use, handling or disposal. Discloser shall incur no liabilities in connection with the foregoing.

4.2 In particular, and without prejudice to the generality of Sub-Clause 4.1, Recipient further acknowledges that (i) any Sample is of a developmental nature, and (ii) Discloser makes no representation, express or implied, that Discloser will supply it on a commercial basis.

4.3 Each party shall remain responsible for consequential damages caused to the other party through the breach of its obligations under Article 2.

## 5. TERM:

5.1 This Agreement shall enter into force as of the Effective Date.

5.2 At the end of the Exchange Period, Recipient shall discontinue its use of Confidential Information and Samples.

5.3 The obligations hereunder shall be binding upon each Recipient for the Secrecy Period.

## 6. CHOICE OF LAW AND DISPUTE RESOLUTION:

6.1 This Agreement shall be governed by and construed in accordance with the Governing Law.

6.2 All disputes arising out of, or in connection with, the validity, interpretation, performance and/or termination of this Agreement, which cannot be amicably settled between the parties, shall be finally settled under the Arbitration Rules by one or more arbitrators appointed in accordance with such Arbitration Rules without recourse to the ordinary courts of law. Arbitration proceedings shall take place in the Arbitration Place, shall be conducted in confidentiality and in the English language. The award rendered therein shall be final, confidential and binding upon the parties. The foregoing is without prejudice to each party's right to seek injunctions, exequatur and other relief in any appropriate court, to the extent the same are not available in arbitration.

## 7. MISCELLANEOUS:

7.1 Each disclosure or supply hereunder shall be at the sole discretion of Discloser.

7.2 Each Discloser shall hold ownership of its Confidential Information and Samples.

7.3 No right other than as set forth hereunder, or license, is granted hereby by Discloser to Recipient, expressly or by implication, with respect to Confidential Information and Samples.

7.4 This Agreement, as may be amended pursuant to the provisions hereof is the entire understanding between the parties concerning the Purpose and supersedes all agreements, communications, understandings, representations, or any other arrangement, whether written or oral, made or existing between the parties prior to or simultaneously with this Agreement in connection with the Purpose.

7.5 This Agreement shall not be deemed to be a commitment of either party to enter into another agreement whether or not in connection with the Purpose and neither party shall incur any obligation of any kind whatsoever other than as set forth in this Agreement.

7.6 No waiver of any provision of this Agreement shall constitute a waiver of any other provision nor shall any waiver constitute a continuing waiver.

7.7 If any provision of this Agreement is declared invalid or unenforceable, all remaining portions of this Agreement shall continue in full force and effect as if this Agreement had been executed without the invalid provision.

7.8 This Agreement may only be superseded, amended or modified by written instrument, properly executed by duly authorized employees of each party.

7.9 Neither party shall assign any of its rights or obligations under this Agreement without the prior written consent of the other party.

7.10 This Agreement may be executed in counterparts, all of which taken together shall be deemed to be one and the same agreement. Execution and delivery of this Agreement by delivery of a facsimile or electronically recorded copy (including a .pdf file) bearing a copy of the signature of a Party shall constitute a valid and binding execution and delivery of this Agreement by such Party.

**IN WITNESS THEREOF,** the parties have caused this Agreement to be executed through their duly authorized officers or representatives in two (2) original copies.

**RHODIA OPERATIONS**　　　　　　　　　**PPT RESEARCH INC.**

Name: ~~Patrice PINSARD~~ Laurent THOMAS　　Name: Chip Ward

Title: ~~Deputy President – Solvay Novecare Europe~~　　Title: President
VP Strategy Novecare