IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

PPT RESEARCH, INC.,

              Plaintiff,

v.

SOLVAY USA INC., *et al.*,

              Defendants.

CIVIL ACTION NO. 20-2645

## MEMORANDUM OPINION

**Schmehl, J.**  /s/ JLS                                                                                      July 17, 2024

      Before the Court is the Motion to Vacate the Final Arbitration Award filed by Plaintiff, PPT Research, Inc. ("Plaintiff" or "PPT"). Defendants, Solvay USA Inc. ("Solvay") and Rhodia Operations S.A.S., ("Rhodia") have also filed a Motion to Confirm the Arbitration Award. Having reviewed the parties' briefing, I will deny PPT's motion to vacate the award and grant Solvay and Rhodia's motion to confirm the award.

**I.**     **BACKGROUND**

      PPT filed this proceeding pursuant to the Federal Arbitration Act , 9 U.S.C. § 1 *et. seq.* ("FAA") to vacate an arbitration award made in a proceeding held by the International Court of Arbitration of the International Chamber of Commerce ("ICC Court"). The award in question addresses a contractual dispute between Solvay and Rhodia (collectively, "Defendants"), companies involved in the development, production, and sale of chemicals and polymers, and PPT, a company that developed technology involving an LVS micro-gel particle slurry suspension system ("LVS technology").

      The action arises from two agreements between the parties: a reciprocal confidentiality agreement and a technology license agreement. Rhodia entered into a

Reciprocal Confidentiality Agreement ("RCA") on June 9, 2014, which provided for a temporary "Secrecy Period" from the time of the agreement to June 8, 2020. The RCA was amended on August 12, 2014, to add Solvay as a party. Under the amended RCA, any tests on the operational performance of the LVS technology by Rhodia were to remain "Confidential Information" between the parties and the "sole property" of Rhodia. (ECF No. 30-2 ¶ 3; RCA, Section 2.6.) On February 20, 2015, Solvay and PPT entered into a Technology License Agreement ("TLA"), which granted Solvay an "exclusive license" to commercialize PPT products in China and Korea. (ECF No. 30-2 ¶ 5; TLA, Section 2(a).) Both agreements contained a dispute resolution clause providing for arbitration under the Rules of Arbitration of the International Chamber of Commerce.

Defendants contend that Solvay entered into the TLA in reliance on PPT's representations of favorable test site results of its LVS technology, because Solvay's own ability to directly analyze the LVS technology was limited by PPT. (ECF No. 30-2 ¶ 55-57; Claimants' Statement of Claim ("SOC"), pages 4-6.) Under the TLA, Solvay was allowed to "manufacture, have manufactured, use, sell or distribute the products" within China and Korea after receiving a technology package and training by PPT that would enable Solvay to commercialize the LVS technology. (ECF No. 30-2 ¶ 58; SOC at 6.) Solvay also agreed, in expectation of future product sales, to pay a one-time royalty fee advance of $100,000 and a licensing and technology transfer fee of $216,000 in monthly installments. (ECF No. 30-2 ¶ 60.)

Over the course of two years, Solvay tried to solve technical problems with the LVS technology in multiple customer trials to no avail. (*Id.* at ¶ 62; SOC at 7; Braem Witness Statement ("CWS-1"), ¶ 37.) According to Mr. Mattias Braem of Solvay, the

failure of the project was ultimately due to the intractable problem of caking that was the focus of the last trials, to which Solvay implemented almost all of PPT's suggestions with no success. (ECF No. 30-2 ¶ 62; SOC at 7; CWS-1 at ¶¶ 51, 66.) At that time, even PPT agreed that there was nothing more for Solvay to do to commercialize the LVS technology. (ECF No. 30-2 ¶ 62; SOC at 7; CWS-1 at ¶ 68.) However, by then, Solvay had expended more than $600,000 on the project but was "unable to make a single dollar in sale" and therefore no royalties ever came due. (ECF No. 30-2 ¶ 63; SOC at 7; CWS-1 at ¶¶ 37, 74.) After a telephone conference in which the parties agreed "to terminate the TLA," (ECF No. 30-2 ¶ 64; CWS-1 at ¶ 77), Solvay sent PPT a letter on June 8, 2018, invoking the termination provisions of the TLA, stating that PPT was in material breach of the contract for failing to provide the technical information or training necessary to commercialize the LVS technology. (*See* ECF No. 30-2 ¶ 64; SOC at 8-9; CWS-1 ¶ 79.)

On June 5, 2020, PPT filed a lawsuit against Defendants (claimants in that action) in the Eastern District of Pennsylvania ("EDPA Action") for (a) alleged misappropriation of PPT trade secrets; (b) alleged breach of the RCA and TLA; and (c) injunctive relief. *PPT Research, Inc., v. Solvay USA Inc., et al.*, Case No. 20-2645 (E.D. Pa, June 5, 2020). Defendants, in response, filed a Request for Arbitration with the ICC Court and a motion in the EDPA Action to compel arbitration of any claims arising under the RCA and/or TLA, citing Section 6.2 of the RCA and Section 11(b) of the TLA. (ECF No. 30-2 ¶ 67, 70, 72.) On July 7, 2021, this Court granted Defendants' motions to compel arbitration and filed an order stating in part that "[t]he parties shall proceed to ICC arbitration in this matter on all claims." *PPT Research*, Case No. 20-2645.

3

As set out in the RCA, the arbitration tribunal applied Delaware law as the applicable substantive law to claims and defenses relating to the RCA and Pennsylvania law and federal law as the applicable substantive law to claims and defenses relating to the TLA. Over the course of arbitration, two claims became uncontested. First, the Parties agreed that the RCA is no longer in effect and the Parties have no continuing obligations arising out of the RCA. Second, the Parties agreed that Solvay effectively terminated the TLA in its letter dated June 8, 2017. As for the contested claims, the Tribunal concluded that (1) PPT materially breached the TLA by failing to provide a technology package and training of the LVS technology that would enable its commercialization as required under Section 5(b), and (2) Defendants' claims are not time-barred based on the plain reading of Section 14(d) of the TLA, and PPT is thus not relieved of its liability for damages for its material breach. In sum, under the TLA, Solvay incurred losses and damages in the amounts of $35,312.23 in payments to PPT, $216,000 for the license and technology transfer, and $100,000 as a royalty fee advance. Defendants were also entitled to arbitration costs in the amount of $46,500.00. Added together, the Tribunal found that PPT is liable to Defendants for $351,312.23 in damages for its material breach of the TLA and $46,500.00 in arbitration costs.

After the entry of the final award as to damages, PPT petitioned this Court to vacate the arbitrator's award. Defendants oppose PPT's petition and seek confirmation of the award. For the reasons that follow, I will deny PPT's petition to vacate the award. Instead, I will grant Defendants' petition to confirm the entire award, as I find that the arbitrator met all standards required for confirmation of an arbitration award.

II. **STANDARD OF REVIEW**

An "extremely deferential standard of judicial review [is] set forth in the Federal Arbitration Act ("FAA"), 9 U.S.C.A. § 10(a)(1)-10(a)(4)," and a "district court may vacate [an award] only under exceedingly narrow circumstances." *Dluhos v. Strasberg,* 321 F.3d 365, 366 (3d Cir.2003), (*citing* 9 U.S.C. § 10); *Amalgamated Meat Cutters & Butcher Workmen of N. Am., Local 195 v. Cross Brothers Meat Packers, Inc.,* 518 F.2d 1113, 1121 (3d Cir.1975). Pursuant to 9 U.S.C. § 10, a judge may vacate an arbitration award (1) where the award was procured by corruption, fraud, or undue means; (2) where there was evident partiality or corruption in the arbitrators... ; (3) where the arbitrators were guilty of misconduct and the rights of any party were thereby prejudiced; or (4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the matter before them was not made. 9 U.S.C. § 10(a)(2)-10(a)(4).

The Third Circuit has also recognized that a district court may vacate an arbitration award in situations where the arbitrator demonstrates "manifest disregard of the law." *See, e.g., Paul Green School of Rock Music Franchising, LLC v. Smith*, 389 Fed. Appx. 172, 175-176 (3d Cir. 2010); *National Clearing Corp. v. Treff*, 2005 WL 67075, at *3 (E.D. Pa. Jan 10, 2005). Manifest disregard of the law occurs when an arbitrator recognizes the applicable law but chooses to ignore it. *Jeffrey M. Brown Assocs., Inc. v. Allstar Drywall & Acoustics, Inc.*, 195 F. Supp. 2d 681, 684–85 (E.D. Pa. 2002) (citing *Coltec Indus., Inc. v. Elliott Turbocharger Grp., Inc.,* No. 99-MC-36, 1999 WL 695870, *5 (E.D. Pa. Sept. 9, 1999)). The party seeking to vacate the arbitration award "on the ground of manifest disregard of the law must demonstrate that the

arbitrator (1) knew of the relevant legal principle, (2) appreciated that this principle controlled the outcome of the disputed issue, and (3) nonetheless willfully flouted the governing law by refusing to apply it." *Paul Green*, 389 Fed. Appx. at 177 (citing *Solt-Nielsen SA v. Animalfeeds Int'l Corp.*, 548 F.3d 85, 95 (2d Cir. 2008)).

Further, it is not proper for the court to "reexamine the evidence" when reviewing an arbitration award. *Mutual Fire, Marine, & Inland Ins. Co. v. Norad Reins. Co., Ltd.,* 868 F.2d 52, 56 (3d Cir.1989). Errors in the arbitrators' factual findings or interpretations of the law do not justify a court's review or reversal on the merits. *United Paperworkers Int'l Union v. Misco, Inc.,* 484 U.S. 29, 36-38 (1987); *Sun Ship, Inc. v. Matson Navigation Co.,* 785 F.2d 59, 62 (3d Cir.1986) (citations omitted). A court may not overrule an arbitrator "simply because it disagrees" with the arbitrator's interpretation of the law. *United Transp. Union Loc. 1589 v. Suburban Transit Corp.*, 51 F.3d 376, 379 (3d Cir. 1995) (*quoting News Am. Publications, Inc. v. Newark Typographical Union, Loc. 103,* 918 F.2d 21, 24 (3d Cir.1990)). Even where the court is convinced that the arbitrator has committed serious error, the award must be enforced unless there is "absolutely no support at all in the record justifying the arbitrator's determinations." *Id.*

It is also well-settled that "remand is to be used sparingly. Arbitrators are not as amenable to remand of a case for retrial in the same manner as are trial judges. Because an arbitration award must be upheld even when there have been 'errors ... in the determination of factual issues,' a remand that allows the arbitrators to reexamine their decision on the merits is not permissible." *Colonial Penn Ins. Co. v. Omaha Indem. Co.*, 943 F.2d 327, 334 (3d Cir. 1991) (citations omitted). Applying these rigorous standards, invitations to remand matters to arbitrators, while frequently made, are only granted by

the courts in limited and unusual circumstances. *Compare Oberwager v. McKechnie, Ltd.,* 2007 WL 4322982 (D.Del. Dec. 10, 2007) (denying remand request); *Local 825 IUOE v. Tuckahoe Sand & Gravel,* 2007 WL 1797657 (D.N.J. June 20, 2007) (same); *Mantaline Corp. v. PPG Industries, Inc.* 2006 WL 297263 W.D.Pa. 2006) (same) *with, O & PIU, Local 471 v. Brownsville General Hospital,* 186 F.3d 326 (3d. Cir.1999) (award ambiguous when third party refusal to comply with counseling provisions of arbitrator's decision made award unenforceable); *Teamsters Local 312 v. Matlack, Inc.,* 118 F.3d. 985 (3d Cir.1997) (remand appropriate where arbitrator sends parties a letter limiting the scope of a prior award); *District 1199C v. Genesis Healthcare,* 2008 WL 5116899 (D.N.J. Dec. 2, 2008) (remand appropriate when back-pay order contained unresolved ambiguity).

### III. **DISCUSSION**

PPT moves to vacate the final award, which awarded Defendants damages in the amount of $351,312.23 and arbitration costs of $46,500.00. In contrast, Defendants seek to confirm the award. PPT argues that the arbitrator exceeded her powers by deciding an issue in manifest disregard of the law. For the reasons set forth below, I find that the issue presented by PPT does not justify vacating the arbitration award as requested, and therefore I will confirm the award in its entirety.

PPT's argument is that the arbitrator exceeded her powers and manifestly disregarded Pennsylvania law and the explicit language of the TLA in deciding that Solvay's claims against PPT were not time-barred. However, here, rather than ignore the applicable law, the arbitrator knew the law (she already knew or was made aware of it by PPT's brief), applied the law, and reached a different conclusion than PPT. Mere

disagreement is not a valid ground to vacate an arbitration award. *See Dunkley v. Mellon Inv. Servs.*, 378 F. App'x 169, 172 (3d Cir. 2010). The statute of limitations for a breach of contract claim in Pennsylvania is four years. 42 Pa. Stat. and Cons. Stat. § 5525. However, PPT argues that the typical four-years statute of limitations was intentionally shortened by the parties to six-months by the last sentence of Section 14(d) of the TLA. Section 14(d) states as follows:

> (d) All rights and obligations created hereunder shall expire upon termination of this Agreement, except that the Definitions, Sections 5(b-c), all confidentiality requirements of Section 6, and Sections 9(c), & 11 shall survive expiration or earlier termination of this Agreement. In no event shall termination of this Agreement release Licensee from the obligation to pay any amounts that became due on or before the date of such termination. *For Sections 5(b-c), enforcement of said Sections shall continue for 6 months following termination of this Agreement as described in Section – 14.*

(emphasis added). Since PPT does not contend that Solvay improperly invoked the indemnification clause of Section 5(b) of the TLA[1] for material breach, the crux of the argument is over interpretation of the last sentence of Section 14(d) as a survival or limiting clause. If it is a survival clause, then Solvay's claims against PPT were time-barred six months after Solvay terminated the TLA by letter on June 8, 2017. If it is a limiting clause, however, then Solvay's claims are not time-barred since they filed their ICC request for arbitration in July 2020, within four years of termination for material breach.

In their briefs, the parties look to different sources for contract interpretation in Pennsylvania. PPT cites *Krizovensky v. Krizovensky*, 624 A.2d 638, 642 (Pa. Super. Ct

---

[1] Section 5(b) of the TLA states as follows: (b) Licensor's Duty to Indemnify. Licensor shall indemnify defend and hold Licensee, its officers, directors, employees, and agents harmless from and against any losses or damages incurred to the extent that they are the result of: (i) any material failure of Licensor to perform the duties and obligations provided for herein, (ii) *any material breach of a representation or warranty of Licensor*, or (iii) any material inaccuracy in the technical data, literature or training materials provided to Licensee. (emphasis added).

8

1993) for the proposition that meaning of a clear and unambiguous contract must be found in the "express language of the agreement" (citing *Steuart v. McChesney*, 444 A.2d 659 (Pa. 1982) and the test set forth in *Alvarez v. Amcor Rigid Plastics USA, LLC*, 2021 WL 3929045, at *3 (E.D. Pa. Sept. 2, 2021) for determining that the contract is enforceable with the limiting clause when the court considers "(1) whether both parties manifested an intention to be bound by the agreement; (2) whether the terms of the agreement are sufficiently definite to be enforced; and (3) whether there was consideration." (citing *Atacs Corp. v. Trans World Communs.*, 155 F.3d 659, 666 (3d Cir. 1998)). In contrast, Solvay asked the arbitrator to apply the Plain Meaning Rule, which is "the first and most important rule to apply in contract interpretation, under Pennsylvania law," and look at the plain language of the TLA to determine its meaning. *EMC Outdoor, LLC v. Stuart*, 2021 WL 1224064, at *3 (E.D. Pa. Mar. 31, 2021).

In light of both arguments, the arbitrator concluded that based on the plain meaning of the TLA, the last sentence of Section 14(d) did not limit the statute of limitations to six-months. The arbitrator focused on section 14(c) of the TLA which states as follows: "No expiration or termination of this Agreement shall relieve either party of any obligation accrued prior to the date of expiration or termination or relieve a party in default from liability for damages for breach of this Agreement." TLA at § 14(c). As a result of the plain language of section 14(c) and 14(d), the arbitrator held as follows:

> [T]he last sentence of Section 14(d) of the TLA does not evidence a clear intent to shorten the Pennsylvania statutory limitations period for a claim of breach of contract. The plain language of Section 14(d) lengthens the period of time that Sections 5(b)-(c) operate beyond termination. Additionally, the plain language of Section 14(c) confirms that there was no intent to shorten the statute of limitations for a claim of breach.

*See* ECF No. 30-2 ¶ 112. The arbitrator further held that

9

> [T]he last sentence of Section 14(d) impacts Section 5(b) only in the case of a "permissive" or voluntary termination by either party in the absence of a breach or other event of default under Section 10. Section 14(d) has no application to a termination for material breach under Section 10.

See *id.* at ¶ 116.

PPT argues that the arbitrator's interpretation of section 14(d) was in manifest disregard of the law because the arbitrator read into the TLA a provision that was not there, despite the TLA providing that "[t]he arbitral tribunal shall not have the power to alter, modify, amend, add to or subtract from any term or provision of this Agreement." (TLA at § 11(b).) However, as aforementioned, to vacate an arbitration award requires a demanding standard where even errors in the arbitrator's interpretation of the law do not require vacatur–only a total lack of support in the record would do so. *United Paperworkers*, 484 U.S. at 36-38; *United Transp. Union Loc. 1589*, 51 F.3d at 379 (quoting *News Am. Publications*, 918 F.2d at 24). Further, the Supreme Court has articulated, when upholding the Third Circuit, that "an arbitral decision 'even arguably construing or applying the contract' must stand, regardless of a court's views of its (de)merits." *Oxford Health Plans LLC v. Sutter*, 569 U.S. 564, 564 (2013) (citing *Eastern Associated Coal Corp. v. Mine Workers,* 531 U.S. 57, 62 (2000)).

Here, too, not only is there support for the arbitrator's interpretation based on the plain meaning of both section 14(c) and 14(d), but the arbitrator also got it right. Even though the correctness of the arbitral award has no impact on my decision to confirm the entire award, it bears mentioning. The arbitrator was correct in interpreting section 14(d) of the TLA as lacking a clear intent to shorten the four-year statute of limitations because section 14(d) is a survival clause, as indicated by its use of the specific language of "shall survive" and "shall continue." *See Deangelo Bros. v. Horne,* 2007 WL 1028870, at *2

(W.D. Mo. Mar. 29, 2007), *order amended on reconsideration*, 2007 WL 1125706 (W.D. Mo. Apr. 16, 2007) (applying Pennsylvania law in interpreting a provision as a survival clause that used specific language of "shall survive"). While it is possible to write in a statute of limitations shortening provision, the law strongly disfavors doing so through a survival clause. *See W. Filter Corp. v. Argan, Inc.*, 540 F.3d 947, 954 (9th Cir. 2008) (holding that the trial court erred in finding that a survival clause created a shortened statute of limitations). In fact, in Pennsylvania, such a provision, while allowed, must demonstrate "a clear expression of such an intent [to shorten a statute of limitations] to be enforceable." *Bills v. Midway Airlines, Inc.*, 1986 WL 4206, at *2 (E.D. Pa. Apr. 4, 1986) (citing *Marshall v. Aetna Casualty & Surety Co.*, 643 F.2d 151, 152 (3d Cir.1981)). There is no such unequivocal intent here.

   Thus, after extensive review of the record in this matter, I find that there is insufficient evidence to support PPT's argument as to this issue. PPT clearly did not meet its burden of demonstrating that the arbitrator knew of the applicable law yet ignored it in a manifest disregard of the law. This Court cannot vacate a valid award of an Arbitrator based upon a mere disagreement by a party who is not happy with the outcome.

   In summary, as District Court review of arbitration decisions is quite narrow, this Court will not rely on conjecture to vacate or remand an otherwise valid decision of an arbitrator. Accordingly, PPT's motion to vacate on this ground is denied and Defendants' motion to confirm the award is granted.

## IV. CONCLUSION

Therefore, for the reasons set forth more fully above, I find that the Final Award of the arbitration in this matter should be confirmed in its entirety and entered as a judgment of this Court.